**OIL HEAT INSTITUTE OF OREGON, an Oregon Nonprofit Corporation, Plaintiff,**

v.

**NORTHWEST NATURAL GAS, an Oregon corporation, Defendant.**

**Civil Nos. 87–853–FR, 88–825–FR.**

United States District Court, D. Oregon.

Sept. 23, 1988.

See also 123 F.R.D. 640.

John W. Stephens, Kim T. Buckley, Esler, Stephens & Buckley, Portland, Or., for plaintiff.

Barnes K. Ellis, Leslie K. Bonney, Stoel, Rives, Boley, Jones & Grey, Portland, Or., Kirk H. Gibson, Northwest Natural Gas Co., Portland, Or., for defendant.

## OPINION

FRYE, District Judge:

The matter before the court is the motion of defendant Northwest Natural Gas Co. (Northwest) for summary judgment or partial summary judgment of the federal claims in each of these consolidated cases. Northwest also moves to dismiss the pendent state claims if summary judgment is granted.

In each of these consolidated cases plaintiff Oil Heat Institute of Oregon (Oil Heat) seeks injunctive relief and/or damages against Northwest for violations of the Lanham Act of 1946, 15 U.S.C. § 1125(a). Oil Heat claims that promotional materials distributed by Northwest contain false descriptions and representations comparing the use of home heating oil and natural gas.

## UNDISPUTED FACTS

Oil Heat is an Oregon nonprofit corporation whose members are located in the States of Oregon and Washington. Northwest is an Oregon corporation and a public utility providing gas utility service in western Oregon and portions of southwestern Washington. Northwest causes its natural gas to enter interstate commerce.

Oil Heat filed CV87–853–FR in July 1987, alleging that two pieces of sales literature used by Northwest, "Gas vs. Oil Comparison" (Exhibit A) and "Natural Gas vs. Oil —You Decide," (Exhibit B) violated the Lanham Act. Northwest does not dispute that it distributed Exhibits A and B. Northwest ceased using or distributing Exhibits A and B in January of 1988.[1]

On May 26, 1988 Oil Heat was granted leave to file an amended complaint which alleged that two new pieces of sales literature distributed by Northwest violated the Lanham Act. Those advertisements are titled " "What to Ask About Gas, Oil and Electric Heat" (Exhibit C) and "Natural Gas vs. Oil—You Decide" (Exhibit D). Exhibit D is a revised version of the discontin-

ued Exhibit B. Northwest does not dispute that it distributed Exhibits C and D.

Oil Heat filed CV88–825–FR on July 22, 1988. In CV88–825–FR, which has been consolidated with CV87–853–FR, Oil Heat alleges that an additional piece of promotional literature distributed by Northwest violates the Lanham Act. This material consists of a letter and reply card (Exhibit E) which were sent to recent purchasers of houses, beginning in the summer of 1987. Northwest does not dispute that it distributes Exhibit E.

In its various complaints Oil Heat also alleges pendent state law claims for unfair competition as to each of the described promotional materials. Trial of the consolidated cases is set to begin on October 4, 1988.

## APPLICABLE LAW

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issues of material fact. Once this initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

## CONTENTIONS OF THE PARTIES

Northwest contends that Oil Heat's claims regarding the two pieces of promotional literature described in the original complaint (Exhibits A and B) are moot, because Oil Heat asks only for injunctive relief as to those materials and Northwest has stopped distributing those materials. Oil Heat does not appear to contest the mootness of the claims relating to Exhibits A and B.

---

**1.** The terms, Exhibit A through Exhibit E, are adopted by the court to clarify references to the various promotional materials because the par-

ties do not use consistent terms to identify these materials. A copy of each of the exhibits is attached.

Regarding Exhibits C and D (the subject of the Amended Complaint), Northwest contends that Oil Heat does not allege the first of five essential elements of a false advertising claim under the Lanham Act, which is that Northwest made false statements of fact about its own product. Northwest contends that the only statements which Oil Heat claims are false are statements that Northwest made about Oil Heat's product. Northwest also contends that the omissions claimed by Oil Heat do not constitute false representations.

Oil Heat responds that Northwest's definition of false representations is incorrect, and that when Northwest's statements and omissions in Exhibits C and D are considered in context they constitute false advertising.

Northwest also contends that Oil Heat has no evidence to support the second, third and fifth elements of its *prima facie* case as to Exhibits C and D. Oil Heat contends that it has produced sufficient evidence to support each of those elements.

Regarding Exhibit E, Northwest contends that when viewed as a whole the letter is not false or deceptive, so that Oil Heat cannot establish the first element of its *prima facie* case. Oil Heat responds that the letter can reasonably be interpreted as making a false representation about natural gas.

Northwest also contends that Oil Heat has no evidence that the letter actually deceived or has a tendency to deceive a substantial segment of the audience; that the deception is material; or that Oil Heat or its members have been injured as a result of the letter. Oil Heat contends that it has produced sufficient evidence as to each of these elements.

Northwest contends that if the court grants its motion for summary judgment the pendent state law claims should be dismissed. Oil Heat responds that dismissal is inappropriate at this stage of the actions.

In the alternative, if the court declines to grant full summary judgment, Northwest asks the court to grant to Northwest partial summary judgment regarding Exhibits C and D "as to all statements contained in its comparative advertising that do not concern natural gas, Northwest's own product, and all statements that are indisputably true." (Defendant's Reply Memorandum at 16.) Northwest also asks for partial summary judgment as to all statements in Exhibit E "that are indisputably true when read in the context of the letter as a whole." (Memorandum in Support of Defendant's Amended Motion at 7.)

## DISCUSSION

■ The elements of a Lanham Act claim regarding comparative advertising are set out in *Skil Corporation v. Rockwell International Corp.*, 375 F.Supp. 777, 783 (N.D.Ill.1974):

1) in its comparison advertisements, defendant made false statements of fact about its own product; [11]

2) those advertisements actually deceived or have the tendency to deceive a substantial segment of their audience;

3) such deception is material, in that it is likely to influence the purchasing decision;

4) defendant caused its falsely advertised goods to enter interstate commerce; and

5) plaintiff has been or is likely to be injured as a result of the foregoing either by direct diversion of sales from itself to defendant, or by lessening of the good will which its products enjoy with the buying public.

(Footnote omitted).

With the exception of the fourth element, each element of Oil Heat's claim is at issue. Northwest contends that Oil Heat has not alleged the first element with respect to Exhibits C and D, and that there is no issue of fact regarding the first element with respect to Exhibit E. Northwest contends that there is no issue of fact regarding the second, third, and fifth elements with respect to Exhibits C, D and E.

The court will consider each of the promotional materials in turn.

**1122**

### 1. *Exhibits A and B*

■ Northwest contends that Oil Heat's claims as to these documents are moot, because it is undisputed that Northwest ceased distributing them in January, 1988. Oil Heat's complaint asks only for injunctive relief as to these materials. Therefore, the claims relating to Exhibits A and B are deemed moot.

### 2. *Exhibit C*

Exhibit C is a three page brochure entitled "What to Ask About Gas, Oil and Electric Heat." Oil Heat contends that three statements in a "Conversion Comparison Chart" contained in the brochure constitute false advertising. The chart compares various home heating methods, including natural gas forced air furnace, electric baseboard, electric forced air furnace, electric heat pump, and oil forced air furnace.

Oil Heat's Amended Complaint alleges that Exhibit C contains "a Conversion Comparison Chart' for natural gas forced air furnaces and oil forced air furnaces that contains false descriptions or representations, including words or other symbols tending falsely to describe or represent the same." Northwest argues that in each of these comparisons the statement regarding natural gas furnaces is literally true, and the only alleged falsehood is in the statement regarding oil furnaces.

Oil Heat argues that false representations about Oil Heat's product as well as Northwest's product may violate the Lanham Act. However, Oil Heat fails to cite persuasive authority for this position. The Second and the Seventh Circuits have held that the Lanham Act applies only to false representations regarding the defendant's product. *Fur Information & Fash. Coun., Inc. v. E.F. Timme & Son,* 501 F.2d 1048, 1051–52 (2d Cir.), *cert. denied,* 419 U.S. 1022, 95 S.Ct. 498, 42 L.Ed.2d 296 (1974); *Bernard Food Industries, Inc. v. Dietene Co.,* 415 F.2d 1279, 1284 (7th Cir. 1969), *cert. denied,* 397 U.S. 912, 90 S.Ct. 911, 25 L.Ed.2d 92 (1970).

The Ninth Circuit has indicated that the Lanham Act applies only to false descriptions or representations of the defendant's product. *SSP Agricultural Equipment, Inc. v. Orchard–Rite Ltd.,* 592 F.2d 1096, 1103 n. 6 (9th Cir.1979). Oil Heat relies upon the district court opinion in *U–Haul International, Inc. v. Jartran, Inc.,* 522 F.Supp. 1238, 1247 (D.Ariz.1981), which states that the false representation may be as to either plaintiff's or defendant's product. However, that case was primarily concerned with false representations regarding the defendant's product, and the Ninth Circuit's opinion affirming the district court considers only representations regarding the defendant's product. *U–Haul International, Inc. v. Jartran, Inc.,* 681 F.2d 1159, 1160–62 (9th Cir.1982). In the absence of Ninth Circuit authority for a more expansive reading of the Lanham Act, this court will apply the definition of a false advertising claim set out in *Skil Corporation, supra,* 375 F.Supp. at 783, and consider only false representations regarding Northwest's products.

■ Oil Heat alleges that three statements in Exhibit C violate the Lanham Act. The first statement compares the average warranty for natural gas forced air furnaces ("15 to 20 years on heat exchanger") and for oil forced air furnaces ("10 years on heat exchanger"). Oil Heat contends that the average warranty on heat exchangers in oil furnaces is as long or longer than the average warranty on heat exchangers in natural gas furnaces. Oil Heat does not contest Northwest's statement that the average warranty on heat exchangers in natural gas furnaces is 15 to 20 years. Therefore, Oil Heat does not show a false representation regarding Northwest's own product in this instance.

■ The second statement compares routine maintenance for natural gas forced air furnaces ("change filters twice yearly") and oil forced air furnaces ("change filters twice yearly; check & clean oil lines & nozzles"). Oil Heat alleges that routine maintenance on gas furnaces includes more than merely changing the filters twice yearly, so that Northwest's statement re-

garding its own product misrepresents the amount of maintenance needed.

Northwest contends that such an omission does not bring a statement within the Lanham Act. However, "[a] statement actionable under the Lanham Act may be an affirmatively misleading statement, a partially incorrect statement, or a statement which is untrue as a result of a failure to disclose a material fact." *U–Haul, supra*, 522 F.Supp. at 1247; *American Home Products Corp. v. Johnson & Johnson*, 577 F.2d 160, 165 (2d Cir.1978). Oil Heat has produced evidence that routine maintenance of gas furnaces requires more than changing filters twice yearly as represented by Northwest. A factfinder could reasonably conclude that Northwest failed to disclose material facts about its product, making the statement untrue.

This discussion assumes that Northwest's products include natural gas heating equipment as well as natural gas itself. Oil Heat has presented evidence which could support a finding that Northwest promotes the sale of natural gas heating equipment in addition to its primary product, natural gas.

The third statement compares the delivery system for natural gas ("24 hour uninterrupted delivery of natural gas through underground gas lines") and heating oil ("oil delivery must be arranged with oil company"). Oil Heat does not contest Northwest's statement regarding the natural gas delivery system, but asserts that the proper comparison is with the automatic delivery program available to oil customers. The only false representation alleged by Oil Heat regarding this comparison relates to oil heating, and not to natural gas.

Therefore, of the three allegedly false statements in Exhibit C, only the second statement, regarding routine maintenance, requires further consideration. Partial summary judgment will be granted as to the statements in Exhibit C regarding average warranty and delivery system.

Northwest contends that Oil Heat has produced no evidence supporting the second, third or fifth elements of its claim regarding the routine maintenance compar-

ison. The second element is that the advertisement actually deceived or has the tendency to deceive a substantial segment of its audience. Northwest contends that Oil Heat has not established this element of its case because Oil Heat has produced no customer surveys or other direct evidence showing that Northwest's statements have a tendency to deceive a substantial segment of the audience.

■ Oil Heat has cited authority that when a statement in an advertisement is actually false, relief can be granted on the court's own findings without reference to the reaction of the buyer or consumer of the product. *PPX Enterprises v. Audiofidelity Enterprises*, 818 F.2d 266, 272 (2d Cir.1987); *American Home Products Corp. v. Johnson & Johnson*, 577 F.2d 160, 165 (2d Cir.1978). Oil Heat has presented evidence which could support a finding that the statement regarding routine maintenance is false. Therefore, the factfinder could conclude without further evidence that the statement deceived or had a tendency to deceive a substantial segment of its audience.

The third element is that the deception is material in that it is likely to influence the purchasing decision. Northwest argues that any deception in its promotional materials was immaterial, because the consumer's choice of an energy source or heating equipment is a complex decision which is unlikely to be based on a single piece of promotional literature. A deception is material if it is "likely to influence the purchasing decision," and need not be the only basis for the consumer's decision. A factfinder could reasonably conclude that information regarding the amount of maintenance required for natural gas equipment is likely to influence the purchasing decisions of consumers.

The fifth element of a false advertising claim is that the plaintiff has been or is likely to be injured as the result of the ads, either by direct diversion of sales from itself to defendant, or by lessening of good will. In *Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186 (2d Cir.1980), the court held that a plaintiff alleging a

Lanham Act claim meets its burden by showing that it is a competitor, and that its sales position is such that a sale by the defendant could represent a loss of a sale by the plaintiff. 631 F.2d at 190–191. The court held that the plaintiff need not prove a loss of sales, and that the actual harm "might be relatively slight," where the plaintiff sought only injunctive relief. *Id.* at 191.

Oil Heat has produced evidence from which it could be found that its members are competitors of Northwest and that sales by Northwest (particularly conversions to natural gas) represent a loss of business to Oil Heat's members. Thus, Oil Heat has presented evidence sufficient to support the fifth element of a Lanham Act claim for injunctive relief.

Accordingly, Northwest's motion for summary judgment is denied as to the statement regarding routine maintenance in Exhibit C. Northwest's motion for partial summary judgment is granted as to the statements in Exhibit C regarding average warranty and delivery system.

3. *Exhibit D*

Exhibit D is a one page flyer distributed with Exhibit C which is entitled "Natural Gas vs. Oil—You Decide!" Exhibit D consists in large part of a comparison chart regarding natural gas and oil. Oil Heat contends that six of the comparisons in the chart constitute false advertising. Northwest contends that the statements in the chart regarding natural gas are true, and that the only false representations alleged by Oil Heat concern oil, and not natural gas, as required under *Skil Corporation.*

The first statement compares the cleanliness of gas ("cleaner burning, non-polluting") and oil ("soot may build-up (which reduces efficiency)"). Oil Heat alleges that the statement regarding natural gas is false because natural gas furnaces can produce carbon monoxide, a pollutant, and because both gas and oil equipment are subject to soot build-up when not maintained and adjusted.

Oil Heat has produced evidence that natural gas is not completely non-polluting and that it can cause soot build-up, which evidence Northwest has attempted to controvert. The court finds that Oil Heat has raised a material issue of fact as to the falsity of this statement with regard to natural gas.

The second statement compares maintenance for natural gas heating equipment ("MINIMAL (change filters)") and oil equipment ("HIGHER; change filters, clogged nozzles, plugged oil lines, etc."). This statement is essentially the same as Northwest's representation regarding routine maintenance in Exhibit C. Oil Heat contends that both natural gas and oil heating equipment require minimal maintenance, but that minimal maintenance consists of more than changing filters. Oil Heat has produced evidence sufficient to support a finding that Northwest omitted material facts regarding maintenance · of natural gas equipment. Thus, there is an issue of fact regarding the falsity of Northwest's description of the maintenance of natural gas equipment.

The third statement compares service for natural gas equipment ("FREE inspections, diagnostic calls and minor adjustments by Gas Co.") and oil equipment ("$75–$100 in annual maintenance typical"). Oil Heat contends that all furnaces (gas and oil) should have annual maintenance in addition to the free services listed by Northwest for natural gas equipment. Oil Heat also contends that most oil dealers offer services equal to or better than those listed by Northwest, for less than $75–$100 per year. These arguments do not indicate any falsity or material omission in Northwest's statement regarding service of natural gas equipment. Therefore, partial summary judgment will be granted as to this statement.

The fourth statement compares storage for natural gas ("none; dependable on demand supply") and oil ("periodic refills necessary in above ground or buried oil tanks, tank replacement expensive"). Oil Heat does not argue that this comparison misrepresents or omits facts regarding natural gas storage, but challenges only the assertions regarding oil storage. Therefore,

partial summary judgment will be granted as to this statement.

The fifth statement compares delivery of natural gas ("underground reliability") and oil ("subject to delivery truck scheduling"). Oil Heat does not challenge the assertion regarding natural gas, but contends only that the statement regarding oil is false because delivery truck scheduling is not a problem. Therefore, partial summary judgment will be granted as to this statement.

The sixth statement compares pricing of natural gas ("regulated by Oregon Public Utility Commission") and oil ("unregulated, subject to foreign influence"). Oil Heat has presented evidence that the statement regarding natural gas omits the facts that natural gas prices are subject to foreign influence and that natural gas prices are affected by the fluctuating price of oil. There is a genuine issue whether Northwest's statement regarding natural gas pricing is false because it omits material facts.

In summary, of the six allegedly false statements in Exhibit D, only the first statement, regarding cleanliness, the second statement, regarding maintenance, and the sixth statement, regarding pricing, require further consideration.

Northwest contends that Oil Heat has not produced evidence supporting the second, third and fifth elements of a false advertising claim for the statements in Exhibit D. For the reasons set out in the discussion relating to Exhibit C, a factfinder could reasonably conclude that the statements in Exhibit D deceived or have the tendency to deceive a substantial segment of their audience, that the deception is material in that it is likely to influence the purchasing decision, and that Oil Heat has been or is likely to be injured by the statements.

Accordingly, Northwest's motion for summary judgment is denied as to the statements in Exhibit D regarding cleanliness, maintenance and pricing. Northwest's motion for partial summary judgment is granted as to the statements in Exhibit D regarding service, storage and delivery.

### 4. *Exhibit E*

■ Exhibit E is a letter and reply card sent out to recent house purchasers. The letter invites homeowners to consider converting to a different type of home heating equipment. The portion of the letter attacked by Oil Heat states:

> If you are using oil or electricity for space or water heating, you are paying much more than is necessary for energy. Conversion to modern high-efficiency gas space heating and water heating will often provide a three or four year return of the original investment and provide cleaner, more dependable, and comfortable sources of heat. Find out why natural gas costs a lot less.

Oil Heat contends that the letter contains two false and misleading statements: 1) if you are using oil for space or water heating, you are paying much more than is necessary for energy, and 2) natural gas costs a lot less. Northwest contends that when the letter is considered as a whole, it is not false or misleading. The first statement does not refer to natural gas, and need not be considered further. The second statement is fairly implied from the letter as a whole, and does make a representation of fact regarding natural gas.

Northwest argues that the letter was aimed at homeowners with older, inefficient heating equipment, that such homeowners are, indeed, paying more than is necessary for heating and that conversion to natural gas would in the long run cost them less. However, the language of the letter does not distinguish between older and newer equipment, but between natural gas, oil and electricity. The evidence presented by Northwest shows that the letter was sent out "randomly" to recent purchasers of houses, without regard to the age of the house or its heating equipment.

In support of its contention that the letter contains false or misleading statements, Oil Heat has produced evidence that oil heating equipment is available which is just

as efficient and economical as natural gas equipment. A factfinder could reasonably accept this evidence and could conclude that the letter contains a false representation that natural gas heating costs less than the most efficient oil heating. The court is not allowed to weigh the conflicting evidence on a motion for summary judgment. Oil Heat's evidence presents a material issue of fact regarding the first element of a Lanham Act claim.

Northwest contends that Oil Heat cannot establish the second, third and fifth elements of its false advertising claim with respect to Exhibit E. For the reasons set out in the discussion of Exhibit C, Oil Heat has presented evidence on these elements sufficient to support injunctive relief regarding Exhibit E. However, Oil Heat seeks damages as well as injunctive relief in its claim for Exhibit E. Northwest points out that a claim for damages may require a higher showing of actual damage or intent to deceive to support the fifth element of a false advertising claim. *U–Haul International, Inc. v. Jartran, Inc.,* 793 F.2d 1034, 1041 (9th Cir.1986).

The court finds that Oil Heat has presented evidence from which a factfinder reasonably could conclude that Oil Heat's members sustained actual damage due to Exhibit E. Mr. Bonaduce, Northwest's employee and the signator of Exhibit E, testified in his deposition that the letter was sent to 9800 recent house purchasers and that Northwest planned to make further mailings. He also testified that about 550 reply cards had been returned by house purchasers seeking information, and that some house purchasers have switched from home heating oil to gas as a result of the letter.

Oil Heat also presents evidence from which a factfinder could conclude that Northwest intended to create a deceptive impression with the letter. Although Northwest contends that the letter was aimed only at homeowners with older, inefficient heating equipment, the letter does not distinguish between efficient and inefficient equipment, simply stating "natural gas costs a lot less." Oil Heat has present-ed evidence indicating that Northwest's employees knew that this statement was not true for all recipients of the letter and that Mr. Bonaduce thought about whether the letter might be misleading for customers who already had high efficiency furnances, but that he did not change the letter or instruct sales representatives who dealt with response cards to correct any misconceptions by consumers.

The court concludes that Oil Heat has presented evidence sufficient to support all of the elements of its false advertising claim regarding Exhibit E, as to both injunctive relief and damages. Northwest's motion for summary judgment is denied as to Exhibit E.

### 5. *Pendent Claims*

Northwest urges that if summary judgment is granted as to any of Oil Heat's claims, the pendent state claims based on the same statements should be dismissed. Oil Heat counters that at this late stage of the litigation the court should exercise its discretion to retain all of the pendent claims in the interests of justice. Northwest has not moved against the pendent claims on the merits.

This court is granting partial summary judgment on the Lanham Act claims against five statements in Exhibits C and D. The pendent unfair competition claims regarding these five statements will be largely, though not completely, based on the same evidence as the remaining federal claims. Generally, at this late stage of litigation it would be in the interests of justice and judicial economy to retain jurisdiction over the pendent claims. However, there is a substantial potential for jury confusion if the pendent claims are included in the trial of this action because some of the statements at issue will be the subject of both federal and state claims, while other statements in the same advertising materials will be the subject only of state claims. Therefore, the court will dismiss Oil Heat's pendent claims relating to the five statements in Exhibits C and D for which partial summary judgment is granted.

This action is deemed moot as to the claims regarding Exhibits A and B. Northwest's motion for summary judgment in these consolidated cases is denied. Northwest's motion for partial summary judgment is granted as to the statements regarding average warranty and delivery system in Exhibit C ("What to Ask About Gas, Oil and Electric Heat" conversion comparision chart), and denied as to the statement regarding routine maintenance in Exhibit C. Northwest's motion for partial summary judgment is granted as to the statements regarding service, storage and delivery in Exhibit D ("Natural Gas vs. Oil—You Decide!"), and denied as to the statements regarding cleanliness, maintenance and pricing in Exhibit D. Northwest's motion for partial summary judgment is denied as to Exhibit E (letter and reply card sent to recent house purchasers). The court grants Northwest's motion to dismiss the five pendent claims based upon statements as to which summary judgment was granted under the Lanham Act.

EXHIBIT A

# Gas vs. Oil Comparison
## Cost Per 100,000 BTUs
## Based on Efficiencies
## 1979 to Present

OIL = 60% Efficient    GAS = 80% Efficient

NOTE:    Oil prices do not reflect additional 10% - 15% costs typically required for annual furnace maintenance.

**NORTHWEST NATURAL GAS**
Phone: 220-2360

EXHIBIT B

# Natural Gas vs. Oil
# YOU DECIDE!

 **GAS**           **OIL**

| | GAS | OIL |
|---|---|---|
| **Cleanliness** | Clean burning, non-polluting | Soot build-up (which reduces efficiency) |
| **Maintenance** | MINIMAL; change filters | HIGH: clogged nozzles, plugged oil lines, etc. |
| **Service** | FREE inspections, diagnostic calls and minor adjustments | $75-$100 in annual maintenance typical |
| **Storage** | None; on demand supply | Tank subject to leakage, replacement $900-$1,300 or annual tank insurance |
| **Delivery** | Underground reliability | Subject to delivery truck scheduling |
| **Supply** | North American; including Oregon | Mainly imported |
| **Billing** | Pay AFTER use for metered amount only | Typically pay in ADVANCE for bulk purchases |
| **Pricing** | Regulated by Oregon Public Utility Commission | Subject to foreign control |
| **New Home Construction*** | Installed in 85% of all new homes | Installed in less than 1% of all new homes |

* Where gas is available

## What Homeowners Say About Natural Gas

"*Efficient, clean and dependable. Much better than the oil heat we did have.*"
                                    E.B., Gresham

"*Gas is more dependable, troublefree, cleaner, less maintenance, no odors, no hoses drug through the flower beds.*"
                                    S.P., Portland

"*Heating bill with oil was $200/month average annually. With two gas furnaces and a 1500 sq. ft. addition on our house, it cost only $63 to heat last month. Thank you so much!*"
                                    R.A., Milwaukie

 **NORTHWEST NATURAL GAS**
Phone: 220-2360                                    1/1/87

EXHIBIT C

Page 23 - OPINION
Exhibit C - Page 1

Electric
52-gallon tank

Natural Gas
50-gallon tank

*●● Natural gas costs less to heat my new 3200 square foot home than it cost to heat my 1700 square foot home in Eugene where electric rates are low ●●*

Dennis Schmahl
Vancouver, WA

Ask to see the EnergyGuides published by the federal government. These bright yellow stickers are on all appliances and show your projected annual energy bill. It's the most objective way to compare operating costs.

## WHAT ABOUT FUTURE ENERGY COSTS?

If you look back over the past several years, you can get an idea where energy prices might go in the future. Both gas and electricity are produced in the United States and

Canada. Their prices are relatively stable. Electricity has remained high in most areas. Natural gas, being the most efficient energy for heating from source to end use, has remained less expensive in most of the Northwest.

Oil prices have been more unpredictable. As our nation continues to depend on foreign oil imports, both the availability and price of oil in the future is a question no one can answer with certainty. (See the comparison chart below for history information.)

## CONVERSION COMPARISON CHART
### FOR ADDITIONAL DATA, PLEASE REFER TO APPROPRIATE SECTION.

| | EQUIPMENT & INSTALLATION COSTS | AVERAGE WARRANTY | ROUTINE MAINTENANCE | DELIVERY SYSTEM | ENERGY COST HISTORY | COMFORT |
|---|---|---|---|---|---|---|
| **NATURAL GAS FORCED AIR FURNACE** | $1200– 3000 | 15-20 years on heat exchanger | Change filters twice yearly | 24 hour uninterrupted delivery of natural gas through underground gas lines | Rates approx. 3% less than 1983 | Provides 115°-125° air from ducts; heats quickly; circulates air |
| **ELECTRIC BASEBOARD** | $ 500– 1200 | 1 year on all parts | Clean radiator fins; dust unit | 24 hour delivery of energy through electrical lines | Rates approx. 35-40% higher than 1983 | Provides radiant heat; does not circulate air |
| **ELECTRIC FORCED AIR FURNACE** | $1300– 2500 | 1 year on all parts | Change filters twice yearly | 24 hour delivery of energy through electrical lines | Rates approx. 35-40% higher than 1983 | Provides air at 105° from ducts; circulates air |
| **ELECTRIC HEAT PUMP** | $2200– 5500 | 5 years on compressor | Check filters monthly; check coils; oil moving parts; check refrigerant charge amount | 24 hour delivery of energy through electrical lines | Rates approx. 35-40% higher than 1983 | Provides 90°-95° air from ducts; needs back-up to heat quickly; provides cooling |
| **OIL FORCED AIR FURNACE** | $1800– 4200* | 10 years on heat exchanger | Change filters twice yearly; check & clean oil lines & nozzles | Oil delivery must be arranged with oil company | Rates approx. 12% less than 1983 | Provides 115°-125° air from ducts; heats quickly; circulates air |

NOTE: Check your local rates. Some PUD's are competitive with natural gas rates.                    *Includes tank and installation

1132

# ASKA NEIGHBOR.

❝Thanks to natural gas, this is the first time in 13 years our house feels like a home. It was never warm before. ❞

*Elena Rodriguez-Lorenzo*
*Lake Oswego, OR*

❝In my area, we can get relatively low PUD electricity. Even so, my choice is natural gas. Gas delivers heat ever so much quicker. ❞

*Dr. Fred Krauss, Ph.D.*
*The Dalles, OR*

❝I recently had gas appliances installed in our home. The money I save each month from my electricity bill covers all the payments for the new appliances. ❞

*Arnold Sorensen*
*Aloha, OR*

❝We greatly appreciate lower heating bills with natural gas. ❞

*Mrs. W. L. Schmitt*
*Beaverton, OR*

❝We have a natural gas furnace with air conditioning. We used to have a heat pump and it ran all day and never cooled the house. Our air conditioner now is cooler. Best of all, when we need heat our natural gas furnace heats more quickly than electricity. ❞

*Janet Pearson*
*Corvallis, OR*

❝Natural gas keeps my house at an even temperature. That's important with a premature baby now living in our home. ❞

*Frances Rose Shaw*
*Portland, OR*

## NORTHWEST NATURAL GAS

EXHIBIT D

# Natural Gas vs. Oil
# YOU DECIDE!

 **GAS**     **OIL**

| | GAS | OIL |
|---|---|---|
| **Cleanliness** | Cleaner burning, non-polluting | Soot may build-up (which reduces efficiency) |
| **Maintenance** | MINIMAL (change filters) | HIGHER (change filters, clogged nozzles, plugged oil lines, etc.) |
| **Service** | FREE inspections, diagnostic calls and minor adjustments by Gas Co. | $75-$100 in annual maintenance contracts typical |
| **Storage** | None: dependable on demand supply | Periodic refills necessary in above ground or buried oil tanks; tank replacement expensive |
| **Delivery** | Underground reliability | Subject to delivery truck scheduling |
| **Billing** | Pay AFTER use for metered amount only | Typically pay in ADVANCE for bulk purchases |
| **Pricing** | Regulated by Oregon Public Utility Commission | Unregulated, subject to foreign influence |
| **New Home Construction** | Installed in 80% of all new homes where gas is available | Installed in less than 1% of all new homes where gas is available |

## What Homeowners Say About Natural Gas

*"What a relief not to have to worry about fuel billing—furnace and tank insurance anymore—and quiet running and no smell."*

D. F., Portland

*"I like the freedom gas gives—no waiting for the fuel people to fill up the tank, no worries. Also far cleaner and heats faster!"*

D. M., Portland

*"I'm very pleased that we have changed to gas. It saves us a good deal of money. Very, very convenient."*

Y. P., Portland

 **NORTHWEST NATURAL GAS**
Phone: 220-2360                    8/17/87

1134

# NORTHWEST  NATURAL GAS COMPANY

220 N.W SECOND AVENUE      PORTLAND, OREGON 97209

(503) 226-4211

Congratulations on the purchase of your new home!

Purchasing or refinancing a home can often lead to
a complex series of decisions about remodeling, painting,
roofing, weatherization, and heating equipment. At
Northwest Natural Gas we often hear from new homeowners
who want to take advantage of our energy management
expertise. We provide home heating and water heating
evaluations and recommendations at no charge.

If you are using oil or electricity for space or water
heating, you are paying much more than is necessary
for energy. Conversion to modern high-efficiency gas
space heating and water heating will often provide
a three or four year return of the original investment
and provide cleaner, more dependable, and comfortable
sources of heat. Find out why natural gas costs a lot
less.

We have several programs designed for new homeowners
like yourself including:

    - Free home energy analysis
    - 100% financing
    - Electric water heater conversion
    - Free gas hook-up in most cases

Please fill in and return the enclosed response card
or call us today for further information at 220-2360.

                    Sincerely,

                    Ralph Bonaduce

                    Ralph Bonaduce
                    Supervisor, Residential
                    Market Services

## NORTHWEST NATURAL GAS CO. REPLY CARD

NAME _____  HOME PHONE _____  BEST TIME TO CALL _____

ADDRESS _____  BUSINESS PHONE _____

CITY _____ STATE ____ .ZIP ____  BEST TIME TO CALL _____ EXT. _____

Which energy presendy heats your home?

GAS ____
OIL ____
ELEC ____
WOOD ____
OTHER ____

I would like information concerning the following natural gas equipment:

____ Furnace          ____ Range
____ Water Heater     ____ Dryer
____ Spa/Hot Tub      ____ BBQ
____ Air Cond./Heat Pump  ____ Fireplace

ALBANY / 926-4253      EUGENE / 342-3661       PORTLAND / 220-2360    THE DALLES / 296-2229
ASTORIA / 325-1632     LINCOLN CITY / 994-2111 SALEM / 585-6611       VANCOUVER / 693-2511